# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| WANDA JEAN CARLISLE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-cv-00121-SGC |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff, Wanda Jean Carlisle, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").   Plaintiff timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).   After consideration of the record and for the reasons stated below, the court concludes this action is due to be affirmed.

## I.  Procedural History

Plaintiff initially filed applications for DIB and SSI benefits in June 2011, alleging a disability onset date of November 19, 2008, due to diabetes, high blood pressure, and heart failure. (R. 120-134, 154).[1]   After the Social Security Administration ("SSA") denied her applications, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 25, 2012.   (R. 20).   Following the hearing, the ALJ found plaintiff had the severe impairments of neuralgia of the right foot, diabetes mellitus, hypertension, and obesity but did not

---

[1]   Reference to a record number ("R. ___ ") refers to the page number in the bound physical copy of the transcript of the entire record of the proceedings.

have an impairment or a combination of impairments listed in or medically equivalent to one listed in the Listings of Impairments. (R. 23). The ALJ further found plaintiff was not under a disability at any time through the date of his decision. (R. 27). Plaintiff appealed to the Appeals Council, which "found no reason under [its] rules to review the Administrative Law Judge's decision" and, therefore, denied plaintiff's request for review. (R. 1). Thus, the ALJ's decision is the final decision of the Commissioner of Social Security. Plaintiff then filed the appeal in this court on January 17, 2014, seeking reversal or remand of the Commissioner's decision. (Doc. 1). On June 13, 2014, the parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 9).

## II.  Factual Background

At the time of the ALJ's decision, plaintiff was forty-seven years old. (R. 37; *see* R 26-27). Plaintiff did not complete high school and had prior work experience as a hospital cleaner and day worker. (R. 26, 37).

### A.  Plaintiff's Medical Records

On November 17, 2008, plaintiff was seen by Dr. Rolando Sanchez, M.D., at UAB. Dr. Sanchez's report documents plaintiff's then-recent admission to the hospital with acute hypertensive urgency. (R. 212). The records from that hospitalization note plaintiff's complaints of dizziness and headache. (R. 212). Dr. Sanchez recorded plaintiff's complaints of chest pain and primary diagnoses of high blood pressure, diabetes, and obesity. (R. 212). Dr. Sanchez increased plaintiff's blood pressure medication, noted neuropathy from diabetes, and counseled plaintiff to eat better and exercise. (R. 213).

On May 20, 2011, plaintiff was admitted to St. Vincent's East complaining of foot pain. (R. 232, 235). Examination revealed a diabetic foot wound on plaintiff's right foot. (R. 229).

On May 21, 2011, plaintiff underwent irrigation and debridgement surgery to treat the wound. (R. 237).    Plaintiff had additional foot problems after stepping on a piece of glass in June 2011. (R. 243).   She underwent surgery to drain this later foot wound on June 6, 2011.   (R. 244).    This wound was slow to heal, requiring several post-operative visits through July 2011.   (R. 241-48).

On September 10, 2012, plaintiff established care at Birmingham Healthcare and was seen by Dr. Sarah Scheurich-Payne, M.D.   (R. 265).   Dr. Scheurich-Payne diagnosed plaintiff with diabetes mellitus, benign essential hypertension, and foot pain.   (R. 266).   On October 3, 2012, plaintiff returned to Birmingham Healthcare, where neuralgia was added to plaintiff's diagnoses. (R. 260).

### B.  Plaintiff's Testimony

Plaintiff testified she suffers from constant pain in both feet which radiates to her back. (R. 38, 43).   At the time of the hearing, plaintiff's right foot pain was long-standing, but she testified to more recent pain in her left foot as well.   (*See* R. 38).   Plaintiff testified the surgery to her diabetic foot wound in May 2011 did not alleviate her pain, which she experienced daily and described as "needle-like."   (R. 38, 43).   Plaintiff testified she attempted to treat the pain by rubbing lotion on her leg.   (R. 43).   While she was originally prescribed Lortab, plaintiff testified she tried not to take it too often.   (R. 44).

Plaintiff also testified she suffers from middle back pain and headaches.   Plaintiff explained her back begins hurting when she leans over for too long.   (R. 44).   Regarding headaches, plaintiff stated she suffers from constant migraine headaches and that she had been experiencing them since she was a child.   (R.44-45).   Plaintiff could not remember the name of the medication she takes for migraines.   (R. 45).

Plaintiff stated her typical day starts with getting up and eating breakfast.   (R. 45).

Plaintiff then "tr[ies] to do a little something around the house" but begins suffering from foot pain and tries to relax and avoid activity. (R. 45). Plaintiff estimated she could do housework for approximately three hours before foot pain would force her to get in bed and prop her feet up. (R. 46). From August 2011 until September 2012, plaintiff did not visit any doctors due to lack of insurance. (R. 48-49). However, plaintiff testified she continued to experience problems and attempted to treat her pain with over-the-counter medicines and rest. (R. 49-50). Plaintiff testified she had difficulty sitting for more than 10 or 15 minutes due to pain and could walk less than a mile. (R. 50). Plaintiff testified she could lift five or ten pounds and had difficulty sleeping for more than six hours. (R. 51-52).

## III.   Standard of Review

In reviewing claims brought under the Social Security Act, the court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). Conclusions of law are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin*, 894 F.2d at 1529).

**IV.  Discussion**

    **A.  The Five-Step Evaluation**

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for benefits] if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The specific steps in the evaluation process and the ALJ's findings for each step are noted below.

    1.  Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  If the claimant is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Here, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (R. 22).

    2.  Severe Impairments

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The burden is on the claimant to "provide medical evidence showing ... impairment(s)" and their severity during the time the claimant

5

alleges disability.   20 C.F.R. §§ 404.1512(c), 416.912(c).   An impairment is "severe" if it "significantly limits [a] claimant's physical or mental ability to do basic work activities."[2] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).   "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. §§ 404.1521(a); 416.921(a).   A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. §§ 404.1523, 416.923.

Here, the ALJ found plaintiff had the severe impairments of neuralgia of the right foot, diabetes mellitus, hypertension, and obesity.  (R. 22).   The ALJ determined plaintiff's complaints of daily migraine headaches and back pain were not severe, due to the lack of medical evidence in the record.  (R. 22-23).   The ALJ acknowledged plaintiff's claim of heart failure in the disability report and noted plaintiff's history of poorly controlled diabetes mellitus with resulting coronary artery disease and retinopathy.   (R. 23).   However, the ALJ found a complete lack of documentation regarding limitations from or treatment for heart failure, coronary artery disease, or retinopathy.  (R. 23).   Accordingly, the ALJ found these impairments were not severe.  (R. 23). Finally, the ALJ found plaintiff's alleged history of gout was not a medically determinable impairment and that there was no indication of diagnosis or treatment in the record.   (R. 23).

---

[2]   Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers, and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6).

### 3.  The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments.   20 C.F.R. §§ 404.1520(a)(4)(iii), (d)-(e); 416.920(a)(4)(iii), (d)-(e); 404.1525; 416.925; 404.1526; 416.926.   Listed impairments are so severe they prevent an individual from performing substantial gainful activity.   20 C.F.R. §§ 404.1525(a), 416.925(a); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 (the "Listings"). If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience.   20 C.F.R. §§ 404.1520(d), 416.920(d).   Here, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled any Listing.   (R. 23).

### 4.  Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of any Listing, the claimant must prove her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (f); 416.920(a)(4)(iv), (f).   At step four, the Commissioner "will first compare [the Commission's] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work."   20 C.F.R. §§ 404.1560(b), 416.960(b).   "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it."   20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).   If the claimant is capable of performing her past relevant work, the Commissioner will find she is not disabled.   20 C.F.R. §§ 404.1560(b)(3); 416.960(b)(3).

Here, the ALJ found plaintiff had the RFC to perform the full range of sedentary work as

defined in 20 C.F.R. § 404.1567(a) and 416.967(a).   (R. 23, 25-26).   In making this determination, the ALJ noted plaintiff would be limited to standing and walking no more than two hours in an eight-hour workday, which was consistent with her testimony that she could do approximately three hours of housework before experiencing foot pain.   (R. 25). The ALJ further found plaintiff was unable to perform any past relevant work, which was performed at the medium and light RFCs.   (R. 26).

In concluding plaintiff could perform the full range of sedentary work, the ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the objective medical evidence and the RFC for sedentary work.   (R. 24).   Regarding plaintiff's claims of severe daily migraines, foot pain, and back pain, the ALJ noted plaintiff's failure to mention these conditions in her disability report to the state agency and plaintiff's sporadic treatment for these conditions.   (R. 24).   The ALJ further noted plaintiff's failure to mention headaches or back pain when she established care at Birmingham Healthcare in the Fall of 2012.   (R. 24).   The ALJ also noted the more recent physical examinations resulted in a "normal" foot exam and revealed no edema in the right foot or lower extremities.   (R. 24).   Additionally, the ALJ noted the only mention of headaches in the record came from a 2008 medical record.   (R. 24).   Accordingly, the ALJ found plaintiff's complaints regarding the severity and effects of headaches and back pain to be less than fully credible.   (R. 24).

The ALJ found plaintiff's diabetes, hypertension, and neuralgia limited her to sedentary exertion levels.   (R. 25).   The ALJ found the limitations associated with sedentary work, including walking and standing for no more than two hours per day, were consistent with plaintiff's testimony that her foot pain begins after doing approximately three hours of house work.   (R. 25). Regarding plaintiff's obesity, the ALJ found it did not preclude the performance of physical

8

activities or routine movement consistent with the sedentary RFC.   (R. 26).   In making this finding, the ALJ relied on: (1) the normal physical evaluations of plaintiff; (2) plaintiff's failure to allege limitations due to her obesity; and (3) the lack of obesity-related restrictions placed on plaintiff by any physician.   (R. 26).

The ALJ assigned great weight to the clinical findings and opinions of plaintiff's treating physicians, noting the findings' internal consistency and consistency with the great weight of evidence in the record.   (R. 26).   The ALJ afforded little weight to the RFC assessment completed on August 11, 2011, by Dr. Gary Turner, M.D.   (R. 26; *see* R. 249-57).   Dr. Turner's RFC was based on plaintiff's foot wound, which was still healing at the time.   (R. 249-57).   The RFC concluded plaintiff could perform light work which avoided the use of foot controls and could occasionally balance and climb ramps and stairs.   (R. 26).   Dr. Turner also concluded plaintiff could frequently stoop, kneel, crouch, and crawl but never climb ladders, ropes, or scaffolds or be exposed to unprotected heights or hazardous machinery.   (R. 26).   The RFC also concluded plaintiff should avoid exposure to damp conditions and extreme temperatures.   (R. 26, 251).   Because the RFC was based on plaintiff's diabetic foot wound, which had healed by the time of the hearing, the ALJ afforded it little weight.   (R. 26).   In affording Dr. Turner's light RFC little weight, the ALJ also noted its failure to account for plaintiff's neuralgia.   (R. 26).

### 5.   Other Work in the National Economy

If the claimant establishes her inability to perform her past relevant work, the Commissioner must show the claimant—in light of her RFC, age, education, and work experience—is capable of performing other work that exists in substantial numbers in the national economy.   20 C.F.R. §§ 404.1560(c)(1)-(2); 416.960(c)(1)-(2).   If the claimant is not capable of performing other work, the Commissioner must find the claimant is disabled. 20 C.F.R. §§ 404.1520(g); 416.920(g).

9

Here, the ALJ determined "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform."   (R. 27).   In making this finding, the ALJ relied on: (1) plaintiff's age of 43 at the alleged onset of disability; (2) plaintiff's limited education and ability to communicate in English; and (3) the fact that transferability of skills was irrelevant because plaintiff's past work was unskilled.   (R. 26-27).   Based on the RFC for the full range of sedentary work, the ALJ found plaintiff was not disabled.   (R. 27).

**B.   Ms. Carlisle's Claims**

Plaintiff contends the ALJ applied improper legal standards and his decision was not supported by substantial evidence.   (Doc. 12 at 1).   Specifically, plaintiff argues the ALJ erred in failing to find a period of disability of at least twelve months and in determining the RFC allowing for the full range of sedentary work.   (Doc. 12 at 5-10).   Each claim is addressed in turn below.

       1.   <u>Twelve Month Disability Period</u>

First, plaintiff contends the ALJ erred in not finding her disabled for at least one year. (Doc. 12 at 5-6).   In support, plaintiff relies on Dr. Turner's RFC, which was created on May 21, 2011, but was prospective to May 21, 2012 (one year after plaintiff's first foot surgery).   (Doc. 12 at 6).   Plaintiff contends the prospective nature of the RFC requires finding her diabetic foot wound established the twelve month threshold disability period.   (Doc. 12 at 6).   Plaintiff further contends the ALJ erred in relying on evidence after the twelve month mark to find Plaintiff was not disabled for the entire period.   (Doc. 12 at 6).   Moreover, Plaintiff points to her post-RFC complaints of worsening foot pain.   (Doc. 12 at 6).   Plaintiff also notes errors in the record referring to her disability claim as a child's claim.   (Doc. 12 at 6; *see, e.g.* R. 64, 70).

Plaintiff cites no authority to support her contention that the ALJ erred in failing to find a twelve month period of disability based on the prospective RFC.   The regulations define

disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  20 C.F.R. § 404.1505(a).  Dr. Turner's RFC was prospective for one year following plaintiff's first foot surgery.  It projected plaintiff would have the RFC to perform light work as of May 21, 2011, but does not address plaintiff's ability to work during the twelve months following her first surgery.  Accordingly, the RFC does not establish a twelve month period of disability. *Gooden v. Astrue*, No. 08-766, 2010 WL 670558, *4 (M.D. Ala. Feb. 23 2010) (prospective RFC did not establish disability during intervening period); *see Smith v. Colvin*, No. 13-294-LSC, 2013 WL 6389520, *6 (N.D. Ala. Dec. 6, 2013) (affirming ALJ's decision and noting lack of legal support for arguments regarding reliance on prospective RFC to establish a period of disability).

Plaintiff's arguments regarding her subsequent complaints of pain do not establish a twelve month period of disability.  Likewise, plaintiff's complaints regarding the agency's initial denial of her claim as a child's claim do not warrant reversal.  The ALJ plainly evaluated plaintiff's claims as adult claims, so any error in the agency's denial was harmless.

2.  The ALJ's RFC

Next, plaintiff contends the ALJ erred in assigning plaintiff's RFC for sedentary work. (Doc. 12 at 7-10).  Plaintiff contends the ALJ's finding is not supported by substantial evidence because plaintiff suffered from a number of impairments which would reasonably affect physical functioning and stamina.  (Doc. 12 at 7).  Plaintiff contends the ALJ avoided performing a function-by-function analysis and applied the wrong standard in assessing plaintiff's obesity. (Doc. 12 at 7-8).  In particular, Plaintiff cites the ALJ's findings regarding plaintiff's obesity, which found plaintiff was obese but concluded she could perform light work because obesity did

not restrict plaintiff.   (R. 27).   Plaintiff contends this is the wrong standard under SSR 02-1p. (Doc. 12 at 8).   Plaintiff also contends the ALJ did not properly explain how an RFC for sedentary work would accommodate her conditions and that the ALJ should have considered developing the record to obtain a medical source opinion and consultative examination when determining her RFC.   (Doc. 12 at 8-9).   Plaintiff argues development of the record was particularly needed because the prospective RFC implied a twelve month period of disability.   (Doc. 12 at 10).   Each contention is addressed in turn, below.

First, plaintiff claims the ALJ erred by failing to address all of her impairments and perform a function-by-function analysis.   However, review of the record reveals the ALJ discussed all of plaintiff's claimed symptoms and impairments, as well as her medical records. While the ALJ found plaintiff's statements concerning the intensity and effects of her symptoms to be less than fully credible due to inconsistencies with the objective medical evidence, he addressed all of plaintiff's claims.   (R. 22-26).

Next, plaintiff contends the ALJ failed to perform a function-by-function assessment.   An ALJ must consider a claimant's medical condition as a whole and express any functional limitations via exertional levels.   S.S.R. 96-8p, 1996 WL 374184 (July 2, 1996); *Stinson v. Colvin*, No. 13-1593, 2015 WL 854493, *13-14 (N.D. Ala. Feb. 27, 2015); *see Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart,* 220 F. App'x 957, 959-60 (11th Cir. 2007).   "Discussing the claimant's medical record and citing a regulation that defines the exertional demands of the claimant's RFC satisfies this requirement."   *Stinson*, 2015 WL 854493 at *13-14 (citing *Castle*, 355 F. App'x at 263; *Freeman*, 220 F. App'x at 959-60).     While the ALJ must consider all of the relevant evidence in assessing a claimant's functional limitations, "the ALJ is not required to 'specifically refer to every piece of evidence in his decision,' so long as

the decision is sufficient to show that the ALJ considered the claimant's medical condition as a whole." *Stinson*, 2015 WL 854493 at *3-4 (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).   Here, after reviewing and discussing the relevant evidence in the record, the ALJ found plaintiff could perform the full range of sedentary work.   (R. 25).   The ALJ also cited the regulation that defines the exertional demands of the sedentary work RFC.   (R. 23). Accordingly, the ALJ complied with Social Security Ruling 96-8p.   *See Stinson*, 2015 WL 854493 at *13-14.

Next, Plaintiff contends the ALJ failed to properly account for the effects of her obesity when calculating her RFC.   (Doc. 12 at 8).   As plaintiff would have it, the ALJ improperly relied on the lack of restrictions placed on plaintiff due to her obesity and should have accounted for limitations that obesity could cause.   (Doc. 12 at 8).   An ALJ must assess the effects of obesity on a claimant's abilities and how obesity would combine with other impairments to restrict a claimant. SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).   Here, the ALJ found plaintiff's obesity to be a severe impairment, referred to SSR 02-1p when considering plaintiff's obesity, and found it did not result in any specific functional limitations.   (R. 22, 26).   In reaching this conclusion, the ALJ noted the lack of allegations or evidence of limitations due to obesity.   (R. 26).   Accordingly, the ALJ applied the proper legal standards when considering plaintiff's obesity.   *See Castel*, 355 F. App'x at 264 (obesity properly considered where ALJ found it to be a severe impairment, referred to SSR 02-1p in the ruling, and found obesity did not "result in any specific functional limitations").   Moreover, substantial evidence supports the ALJ's conclusions regarding plaintiff's obesity.

Plaintiff also contends the ALJ did not explain how limiting her to sedentary work would accommodate the limitations she alleged.   (Doc. 12 at 9).   In arguing this point, plaintiff points to

the limitations imposed in Dr. Turner's RFC, including preclusions on working around high temperatures, moisture, and hazardous environments.  (Doc. 12 at 9).  As an initial matter, it must be noted that non-treating sources, such as Dr. Turner's RFC, are not entitled to any special deference.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).  Here, the ALJ afforded little weight to Dr. Turner's RFC due to:  (1) the RFC's focus on plaintiff's diabetic foot ulcer—an impairment that no longer affected plaintiff; (2) medical evidence obtained from treating physicians following Dr. Turner's RFC; and (3) the RFC's failure to account for all of plaintiff's conditions.  (R. 26).  Specifically, the ALJ noted more recent medical records indicating plaintiff's diabetic foot wound had healed and found the RFC failed to account for plaintiff's neuralgia.  (R. 26).  Accordingly, the ALJ properly discounted the RFC.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 842 (11th Cir. 2013) ("the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion").  Moreover, plaintiff did not prove additional postural, environmental, and mental limitations.  *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) (plaintiff bears the burden of establishing claim for disability and producing evidence to support it).

Finally, plaintiff argues the ALJ should have developed the record to obtain a medical source opinion before assigning an RFC.  (Doc. 12 at 9-10).  While an ALJ must develop a full and fair record, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record."  *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).  An ALJ need not obtain a medical source opinion when the record contains sufficient evidence for the ALJ to make an "informed decision."  *Stinson*, 2015 WL 854493 at *12 (citing *Smith v. Comm'r*, 501 F. App'x 875 at 878 (11th Cir. 2012).  Moreover, "the lack of [a] medical source statement

will not make the report incomplete."   20 C.F.R. § 404.1513(b)(6); *see Langley v. Astrue*, 777 F.

Supp. 2d 1250, 1261 (N.D. Ala. 2011).   Here, the record was sufficient for the ALJ to make an

informed decision, including internally consistent medical records from plaintiff's treating

physicians.   Additionally, plaintiff has not shown the prejudice necessary to reverse the ALJ's

decision based on failure to further develop the record.   Accordingly, the record considered by the

ALJ was sufficient and failure to develop it further was not error.

## V.   Conclusion

Upon review of the administrative record and considering all of Ms. Carlisle's arguments,

the court finds the Commissioner's decision is supported by substantial evidence and is in accord

with the applicable law.   Accordingly, the decision of the Commissioner is due to be

**AFFIRMED**, and this action **DISMISSED**.

A separate order will be entered.

**DONE** this 26th day of March, 2015.

STACI   G. CORNELIUS
U.S. MAGISTRATE JUDGE